1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SEAN O'NEAL,                              No.  2:14-cv-2374 DB PS

12                   Plaintiff,

13          v.                                 ORDER

14   AUGUST JOHNSON, et al.,

15                   Defendants.

16

17          This matter came before the court on October 7, 2016, for the hearing of defendants'

18   motion for summary judgment.[1]  (ECF No. 124.)  Plaintiff's eighth amended complaint alleges,

19   generally, that defendant Sacramento Police Officer August Johnson subjected plaintiff to

20   unlawful search and seizure, and false arrest, while defendant City of Sacramento withheld

21   exculpatory evidence, as well as an alleged <u>Monell</u> claim.  Senior Deputy City Attorney Sean

22   Richmond appeared on behalf of the defendants.  Plaintiff Sean O'Neal appeared in person on his

23   own behalf.  After hearing oral argument, defendants' motion was taken under submission.

24          Having reviewed defendants' motion, the documents filed in support and opposition, and

25   the arguments made at the October 7, 2016 hearing, defendants' motion will be granted in part

26   and denied in part.  In this regard, THE COURT FINDS AS FOLLOWS:

27   _____

28   [1]  The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28
     U.S.C. § 636(c)(1).  (ECF No. 16.)

1   DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

2         Defendants' statement of undisputed facts is supported largely by citation to a declaration

3   provided by defendant August Johnson, plaintiff's eighth amended complaint, and a request for

4   judicial notice of a state court felony complaint.  Defendants' statement of undisputed facts

5   establishes the following.  On December 13, 2010, Sacramento Police Officer August Johnson,

6   ("defendant Johnson"), was patrolling, in uniform on a marked police bicycle, in downtown

7   Sacramento.  At approximately 2:01 p.m., defendant Johnson received a dispatch advising him

8   that a Greyhound Bus security officer had reported that a black man, approximately 5' 8",

9   wearing a black hat and brown jacket, carrying a large black bag emitting a strong odor of

10  marijuana, had left the Greyhound Bus station and was walking up 7th Street toward J Street.

11  Officer Johnson responded to the call and contacted the person described in the report—plaintiff

12  Sean O'Neal.  (Defs.' SUDF (ECF No. 105-2) 1-3.[2])

13        Plaintiff was talking on a cell phone, and carrying a large black trash bag as well as a

14  black briefcase.  It appeared to defendant Johnson that the black trash bag was weighted

15  substantially because it bulged and was rounded at its bottom.  Defendant Johnson immediately

16  smelled a strong odor of marijuana, which defendant Johnson was familiar with, emanating from

17  the bag.  After plaintiff completed his phone call, defendant Johnson introduced himself and

18  asked plaintiff if he was carrying any marijuana, to which plaintiff replied that he was.  (Defs.'

19  SUDF (ECF No. 105-2) 4-8.)

20        Plaintiff began walking again.  Defendant Johnson rode alongside and asked plaintiff how

21  much marijuana he was carrying.  Plaintiff did not respond.  Defendant Johnson again asked and

22  plaintiff again did not respond.  Thereafter, both plaintiff and defendant Johnson stopped and

23  defendant Johnson asked plaintiff for identification.  Plaintiff took out his wallet, stated that he

24  was ill, and that he was looking for his medical marijuana card.  (Defs.' SUDF (ECF No. 105-2)

25  9-13.)

26  ////

27

28    [2]  Citations here are to the specific numbered undisputed fact asserted.

1   Defendant Johnson again asked plaintiff how much marijuana he was carrying and for his

2   identification, and plaintiff did not respond to defendant Johnson's questions.  Defendant Johnson

3   also asked plaintiff to put his bags on the ground and plaintiff would not do so.  Defendant

4   Johnson observed that plaintiff "would not look at him and was swiveling his head back and forth

5   appearing to look for an escape route."  Defendant Johnson supposed plaintiff may attempt to flee

6   and radioed for assistance.  (Defs.' SUDF (ECF No. 105-2) 14-17.)

7   Plaintiff located his medical marijuana card in his wallet, which stated that he was legally

8   permitted to carry an amount of eight ounces of marijuana for his personal use.  Because plaintiff

9   did not produce identification and put the items he was carrying on the ground, given the fact that

10  he smelled a strong odor of fresh marijuana emitting from a trash bag with substantial girth and

11  given defendant Johnson's perception of plaintiff's furtive indications of attempting to flee,

12  defendant Johnson believed that there was a high probability that plaintiff had, or was in the

13  process of committing a crime.  Accordingly, defendant Johnson detained plaintiff and "took both

14  the trash bag and briefcase from [p]laintiff's person."[3]  (Defs.' SUDF (ECF No. 105-2) 18-20.)

15  Defendant Johnson "unknotted the trash bag and found four half-gallon Ziploc baggies"

16  filled with marijuana.  Defendant Johnson then opened the briefcase and found three more half-

17  gallon Ziploc baggies, and 11 quart-sized baggies, also filled with marijuana.  A digital scale and

18  two books about marijuana were also found in the briefcase.  Defendant Johnson concluded that

19  the cumulative weight of the baggies exceeded the eight ounces that plaintiff was lawfully

20  permitted to carry pursuant to his medical marijuana card.  (Defs.' SUDF (ECF No. 105-2) 21-

21  23.)

22  Defendant Johnson arrested plaintiff for possessing marijuana for sale, in violation of

23  California Health and Safety Code § 11359, and for the transportation of marijuana, in violation

24  of California Health and Safety Code § 11360.  Plaintiff was booked and taken to the Sacramento

25  County Jail.  The marijuana was booked into evidence and later weighed.  The baggies containing

26

27  [3]  The eighth amended complaint alleges that, at this time, defendant Johnson "put the Plaintiff into handcuffs and then illegally search[ed] the Plaintiff's luggage."  (8th Am. Compl. (ECF No.

28  33) at 10.)

1   marijuana had a cumulative weight of 3.75 pounds.  (Defs.' SUDF (ECF No. 105-2) 24-26.)

2          On December 15, 2010, plaintiff was formally arraigned by the Sacramento County

3   District Attorney for a felony violation of California Health and Safety Code § 11359.  Plaintiff

4   remained incarcerated until December 6, 2011, when the Sacramento County Superior Court held

5   that defendant Johnson did not have probable cause to believe that plaintiff was in possession of

6   an amount of marijuana exceeding the eight ounce limit.  In this regard, the Sacramento County

7   Superior Court granted plaintiff's motion to suppress evidence and all charges stemming from the

8   December 13, 2010, incident were dismissed by the County of Sacramento.  (Defs.' SUDF (ECF

9   No. 105-2) 27-29.)

10                         PLAINTIFF'S OPPOSITION

11          Plaintiff's opposition does not comply with Local Rule 260(b).  That rule requires a party

12  opposing summary judgment to (1) reproduce each fact enumerated in the moving party's

13  statement of undisputed facts and (2) expressly admit or deny each fact.  Under that provision the

14  party opposing summary judgment is also required to cite evidence in support of each denial.[4]  In

15  the absence of the required admissions and denials, the court has reviewed plaintiff's filings in an

16  effort to discern whether plaintiff denies any fact asserted in defendants' statement of undisputed

17  facts and, if so, what evidence plaintiff has offered that may demonstrate the existence of a

18  disputed issue of material fact with respect to any of his claims.[5]

19                         PROCEDURAL BACKGROUND

20          This action was removed to this court on October 9, 2014.  (ECF No. 1.)  Plaintiff is

21  proceeding on his eighth amended complaint.  (ECF Nos. 33 & 65.)  Therein, plaintiff alleges that

22  defendant Johnson subjected plaintiff to unlawful search and seizure, and false arrest.  Plaintiff

23  also asserts a claim against the City of Sacramento for withholding exculpatory evidence, as well

24  as a claim asserted pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978),

25  [4]  It appears plaintiff attempted to partially comply with Local Rule 260(b) by filing a document
26  styled "GENUINE ISSUES AND CONTROVERTED FACTS" in which plaintiff disputes
    various assertions found in defendants' memorandum in support of the motion for summary
27  judgment.  (ECF No. 126-3.)
    [5]  Plaintiff states in his, unauthorized, sur-reply that he "does not dispute much of the undisputed
28  facts," asserted by the defendants.  (Pl.'s Reply (ECF No. 129) at 2.)

                                        4

1   against the City of Sacramento.  (8th Am. Compl. (ECF No. 33) at 4-16.[6])

2        On July 25, 2016, defendants filed the pending motion for summary judgment.  (ECF No.

3   105.)  Plaintiff filed an opposition on October 28, 2016.  (ECF No. 126.)  Defendants filed a reply

4   on November 7, 2016.  (ECF No. 127.)  Plaintiff filed a sur-reply on November 15, 2016.[7]  (ECF

5   No. 129.)

6                    LEGAL STANDARDS

7   **I.**    **Summary Judgment**

8        Summary judgment is appropriate when the moving party "shows that there is no genuine

9   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

10   Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of

11   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

12   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

13   The moving party may accomplish this by "citing to particular parts of materials in the record,

14   including depositions, documents, electronically stored information, affidavits or declarations,

15   stipulations (including those made for purposes of the motion only), admission, interrogatory

16   answers, or other materials" or by showing that such materials "do not establish the absence or

17   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

18   support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden

19   of proof at trial, "the moving party need only prove that there is an absence of evidence to support

20   the nonmoving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see

21   also Fed. R. Civ. P. 56(c)(1)(B).

22        Indeed, summary judgment should be entered, after adequate time for discovery and upon

23   motion, against a party who fails to make a showing sufficient to establish the existence of an

24   element essential to that party's case, and on which that party will bear the burden of proof at

25

26   [6]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

27   [7]  The filing of a sur-reply is not authorized by the Federal Rules of Civil Procedure or the Local Rules.  See Fed. R. Civ. P. 12; Local Rule 230.  Nonetheless, in light of plaintiff's pro se status, the undersigned has reviewed plaintiff's sur-reply and considered it in evaluating defendants'

28   motion.

1  trial.  See Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential

2  element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In

3  such a circumstance, summary judgment should be granted, "so long as whatever is before the

4  district court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id.

5  at 323.

6       If the moving party meets its initial responsibility, the burden then shifts to the opposing

7  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

8  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

9  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

10 of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

11 admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

12 Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

13 fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

14 governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

15 Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

16 genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

17 party.  See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

18      In the endeavor to establish the existence of a factual dispute, the opposing party need not

19 establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

20 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

21 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

22 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

23 Matsushita, 475 U.S. at 587 (citations omitted).

24      "In evaluating the evidence to determine whether there is a genuine issue of fact," the

25 court draws "all reasonable inferences supported by the evidence in favor of the non-moving

26 party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

27 the opposing party's obligation to produce a factual predicate from which the inference may be

28 drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

1    *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

2    party "must do more than simply show that there is some metaphysical doubt as to the material

3    facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

4    nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

5    omitted).

6    **II.     Qualified Immunity**

7          "Qualified immunity protects government officials from civil damages 'insofar as their

8    conduct does not violate clearly established statutory or constitutional rights of which a

9    reasonable person would have known.'"  Chappell v. Mandeville, 706 F.3d 1052, 1056 (9th Cir.

10   2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Taylor v. Barkes, 135

11   S.Ct. 2042, 2044 (2015) ("Qualified immunity shields government officials from civil damages

12   liability unless the official violated a statutory or constitutional right that was clearly established

13   at the time of the challenged conduct.'").  When a court is presented with a qualified immunity

14   defense, the central questions for the court are: (1) whether the facts alleged, taken in the light

15   most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or

16   constitutional right; and (2) whether the right at issue was "clearly established."  Saucier v. Katz,

17   533 U.S. 194, 201 (2001).

18         The United States Supreme Court has held that "while the sequence set forth there is often

19   appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, 555 U.S. 223,

20   236 (2009).  In this regard, if a court decides that plaintiff's allegations do not make out a

21   statutory or constitutional violation, "there is no necessity for further inquiries concerning

22   qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that the right at

23   issue was not clearly established at the time of the defendant's alleged misconduct, the court may

24   end further inquiries concerning qualified immunity at that point without determining whether the

25   allegations in fact make out a statutory or constitutional violation.  Pearson, 555 U.S. 236-42.

26         "A government official's conduct violate[s] clearly established law when, at the time of

27   the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

28   official would have understood that what he is doing violates that right.'"  Ashcroft v. al-Kidd,

1   563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  In this

2   regard, "existing precedent must have placed the statutory or constitutional question beyond

3   debate."  Id.; see also Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry

4   focuses on . . . whether the state of the law [at the relevant time] gave 'fair warning' to the

5   officials that their conduct was unconstitutional.") (quoting Saucier, 533 U.S. at 202).

6   "The dispositive question is 'whether the violative nature of particular conduct is clearly

7   established.'"  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting al-Kidd, 563 U.S. at 742.)

8   The inquiry must be undertaken in light of the specific context of the particular case.  Saucier,

9   533 U.S. at 201.  "In a nutshell, according to the Supreme Court, state officials are entitled to

10  qualified immunity so long as 'none of our precedents 'squarely governs' the facts here,' meaning

11  that 'we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the

12  law' would have . . . acted as the officials did.'"  Hamby v. Hammond, 821 F.3d 1085, 1091 (9th

13  Cir. 2016) (quoting Mullenix, 136 S. Ct. at 310.)

14       "In the context of an unlawful arrest . . . the two prongs of the qualified immunity analysis

15  can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is

16  reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers

17  could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified

18  immunity."  Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011).  Because

19  qualified immunity is an affirmative defense, the burden of proof initially lies with the official

20  asserting the defense.  Harlow, 457 U.S. at 812.

21                                          ANALYSIS

22  I.     **Probable Cause**

23       Defendants argue that it was objectively reasonable for defendant Johnson to conclude

24  that there was "probable cause for a warrantless arrest and a search incident to that arrest" of

25  plaintiff and his belongings based on the facts stated above.  (Defs.' MSJ (ECF No. 105-1) at 11.)

26       The Fourth Amendment protects persons against "unreasonable searches and seizures."

27  U.S. Const. amend. IV.  The Supreme Court "has stated 'the general rule that Fourth Amendment

28  seizures are 'reasonable' only if based on probable cause' to believe that the individual has

                                              8

committed a crime." <u>Bailey v. U.S.</u>, 133 S. Ct. 1031, 1037 (2013) (quoting <u>Dunaway v. New York</u>, 442 U.S. 200, 213 (1979)). "[A]n arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 685 (9th Cir. 2001) (quoting <u>Borunda v. Richmond</u>, 885 F.2d 1384, 1391 (9th Cir. 1988)).

"Probable cause exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." <u>United States v. Lopez</u>, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)). "Alternatively, this court has defined probable cause as follows: when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" <u>Id.</u> (citing <u>United States v. Smith</u>, 790 F.2d 789, 792 (9th Cir. 1986)) (alteration in original); <u>see</u> <u>also</u> <u>Crowe v. County of San Diego</u>, 608 F.3d 406, 432 (9th Cir. 2010) ("In determining whether there was probable cause to arrest, we look to the totality of circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime.").

"'While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, [m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'" <u>Torres v. City of Los Angeles</u>, 548 F.3d 1197, 1206-07 (9th Cir. 2008) (quoting <u>Lopez</u>, 482 F.3d at 1072). "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities." <u>Gasho v. United States</u>, 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted). "Although 'police may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.'" <u>Crowe</u>, 608 F.3d at 433 (quoting <u>United States v. Ortiz-Hernandez</u>, 427 F.3d 567, 574 (9th Cir. 2005)).

Moreover, it is generally presumed a warrantless search is unreasonable, and therefore violates the Fourth Amendment, unless it falls within a specific exception to the warrant requirement. <u>Riley v. California</u>, 134 S. Ct. 2473, 2482 (2014) (citing <u>Kentucky v. King</u>, 563

9

1    U.S. 452 (2011)). "Warrantless searches by law enforcement officers 'are per se unreasonable

2    under the Fourth Amendment—subject only to a few specifically established and well-delineated

3    exceptions.'" United States v. Cervantes, 703 F.3d 1135, 1138-39 (9th Cir. 2012) (quoting Katz

4    v. United States, 389 U.S. 347, 357 (1967)).

5           Defendants argue that the following facts support defendant Johnson's conclusion that

6    probable cause existed to believe that a crime had been committed or was being committed:

7               Plaintiff's admission that he was carrying marijuana, a strong odor
                of fresh marijuana emanating from the trash bag Plaintiff was
8               carrying, the girth of the trash bag, Plaintiffs refusal to answer
                [defendant Johnson's] direct questions and Plaintiff's mannerisms
9               that included Plaintiff not looking [defendant Johnson] in the eye
                and swiveling his head back and forth seemingly looking for a route
10              to escape.

11   (Defs.' MSJ (ECF No. 105-1) at 11.)

12          However, California law affords "certain protections to individuals who elected to

13   participate in the [medical marijuana] identification card program," specifically "immunity from

14   prosecution for a number of marijuana-related offenses" including possession of marijuana for

15   sale and transportation of marijuana."[8] People v. Wright, 40 Cal.4th 81, 93 (Cal. 2006). Here, it

16   is undisputed that prior to his arrest, plaintiff informed defendant Johnson that he was carrying

17   marijuana and provided defendant Johnson with a medical marijuana identification card that

18   permitted plaintiff to legally carry eight ounces of marijuana.  (Johnson Decl. (ECF No. 105-4) at

19   2-3.)

20          In this regard, defendant Johnson's perception of a strong odor of fresh marijuana

21   emanating from plaintiff's large trash bag was explained by the fact that plaintiff was legally

22   permitted to possess eight ounces of marijuana and had recently departed from a bus station.  See

23   generally U.S. v. Carpenter, 461 Fed. Appx. 539, 540 (9th Cir. 2011) ("probable cause depends

24   on all of the surrounding facts, including those that reveal a person's status as a qualified patient

25   or primary caregiver under the CUA or MMPA"); Allen v. Kumagai, 356 Fed. Appx. 8, 9 (9th

26

27   ───────────────
     [8]  Although this provision does not grant plaintiff immunity from arrest, an arresting officer must
     still have probable cause to arrest a person for any crime.  People v. Mower, 28 Cal.4th 457, 469
28   (Cal. 2002).

1   Cir. 2009) ("Although Allen cannot use § 1983 to vindicate his purported state-law right to use

2   marijuana for medical purposes, the officers' knowledge of his medical authorization may be

3   relevant to whether they had probable cause to believe he had committed a crime."); U.S. v.

4   Phillips, 9 F.Supp.3d 1130, 1138 (E.D. Cal. 2014) ("when officers become aware that a suspect

5   has a medical marijuana card, the officers must take that information into account when

6   determining whether there is probable cause to conduct a warrantless search or arrest that

7   individual"); People v. Mower, 28 Cal.4th 457, 469 (Cal. 2002) ("Probable cause depends on all

8   of the surrounding facts including those that reveal a person's status as a qualified patient or

9   primary caregiver under section 11362.5(d)."); County of Butte v. Superior Court, 175

10  Cal.App.4th 729, 737 (2009) ("Any consideration of probable cause must include the officer's

11  consideration of the individual's status as a qualified medical marijuana patient."); cf. Lingo v.

12  City of Salem, 832 F.3d 953, 961 (9th Cir. 2016) ("In short, the combination of the marijuana

13  odor, the undisputed presence of Lingo's children in the house, and the fact that Lingo did not

14  have medical marijuana privileges gave the officers probable cause to believe that Lingo had

15  committed a crime.").

16          With respect to plaintiff's asserted refusal to answer defendant Johnson's "questions," it

17  appears that the only question that remained unanswered at the time of defendant Johnson's

18  probable cause determination was "how much marijuana [plaintiff] had." (Johnson Decl. (ECF

19  No. 105-4) at 3.) In this regard, it appears undisputed that prior to the arrest and search, plaintiff

20  had provided defendant Johnson with his medical marijuana card. (Id.)

21          Although it is unclear if this is related to the medical marijuana card, plaintiff has also

22  asserted that he provided defendant Johnson with a physician's statement permitting plaintiff to

23  possess eight ounces of marijuana because of his medical condition, and that this statement had a

24  photo copy of plaintiff's California driver's license. (Pl.'s Opp.'n (ECF No. 126-1) at 5.)

25  Moreover, plaintiff filed a transcript from his state court criminal proceeding at which defendant

26  Johnson testified that, while plaintiff was looking for his medical marijuana card prior to his

27  arrest, defendant Johnson "saw a California ID card was . . . right there in his wallet" and

28  ////

1  "reached over and pulled [plaintiff's] ID out of his wallet."[9]  (Id. at 25.)  In this regard, it appears

2  that defendant Johnson was aware of plaintiff's identity prior to his probable cause determination.

3         With respect to defendant Johnson's assertion that plaintiff refused to state how much

4  marijuana he possessed, "[a]n individual's temporary refusal to comply with an officer's

5  commands is not in itself a valid basis for an arrest."  Sialoi v. City of San Diego, 823 F.3d 1223,

6  1234 (9th Cir. 2016).  Indeed, the Supreme Court has "consistently held that a refusal to

7  cooperate, without more, does not furnish the minimal level of objective justification needed for a

8  detention or seizure."  Florida v. Bostick, 501 U.S. 429, 437 (1991); see also Florida v. Royer,

9  460 U.S. 491, 497-98 (1983) ("The person approached, however, need not answer any question

10  put to him; indeed, he may decline to listen to the questions at all and may go on his way.");

11  Mackinney v. Nielsen, 69 F.3d 1002, 1006 (1995) ("It is well established under California law

12  that even an outright refusal to cooperate with police officers cannot create adequate grounds for

13  police intrusion without more."); People v. Bower, 24 Cal.3d 638, 649 (Cal. 1979) ("this court

14  has held that an outright refusal to cooperate with police officers cannot create adequate grounds

15  for an intrusion which would otherwise be unjustifiable").

16         Finally, with respect to defendant Johnson's subjective interpretation of plaintiff's

17  mannerisms, which included plaintiff not looking defendant Johnson in the eye and swiveling his

18  head back and forth seemingly looking for a route to escape, "[n]ervousness, [even in] in a high-

19  crime area, without more, is not sufficient to establish reasonable suspicion to detain an

20  individual" let alone probable cause for an arrest.  U.S. v. Reid, 144 F.Supp.3d 1159, 1163 (S.D.

21  Cal. 2015) (citing Moreno v. Baca, 431 F.3d 633, 642 (9th Cir. 2005)).  Although "in some

22  circumstances an individual's flight from law enforcement in a high crime area can justify an

23  investigatory seizure[,]" a suspect's "simple act of walking away from the officers" is not the

24  equivalent of flight.  Moreno, 431 F.3d at 643; see also Washington v. Lambert, 98 F.3d 1181,

25  ————————————————

26  [9]  See In re American Continental/Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996) (a district court may take into account judicially noticeable materials such as publicly

27  available records and transcripts from judicial proceedings in related or underlying cases which have a direct relation to the matters at issue) rev'd on other grounds sub nom. Lexecon Inc. v.

28  Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).

1192 (9th Cir. 1996) ("[M]any innocent black men, and even many innocent white men, will
appear nervous when they notice that they are being followed by the police."); United States v.
Valentine, 232 F.3d 350, 357 (3d Cir. 2000) ("Walking from the police hardly amounts to the
headlong flight . . . and of course would not give rise to reasonable suspicion by itself, even if in a
high crime area, but it is a factor that can be considered in the totality of the circumstances.").
Here, prior to defendant Johnson's probable cause determination, plaintiff had not fled nor was
plaintiff moving, but was instead stopped.  As noted above, plaintiff had also apparently provided
defendant Johnson with, at a minimum, some form of identification.[10]

Defendants cite U.S. v. Blackstock, 451 F.2d 908, 910 (9th Cir. 1971), and In re D.D., 234
Cal. App. 4th 824 (2015), in support of their argument that defendant Johnson "had probable
cause to conduct a warrantless search of [the plaintiff]."  (Defs.' MSJ (ECF No. 105-1) at 12-13.)
Blackstock, however, involved a defendant stopped by a United States Customs Agent in
Arizona, in 1970—26 years prior to California's enactment of the Compassionate Use Act of
1996.  In this regard, defendants' reliance on Blackstock is misplaced.  See generally Mower, 28
Cal.4th at 469 ("Probable cause depends on all of the surrounding facts including those that
reveal a person's status as a qualified patient or primary caregiver under section 11362.5(d).")

With respect to D.D., defendants argue that:

> The court held that given the totality of circumstances it was
> reasonable to conduct a warrantless search of the suspects as the
> Officers provided specific articulable facts that the detained
> suspects may be involved in criminal activity.  In consideration of
> the "totality of the circumstances" giving way to a legal detention
> and permissible warrantless search of the suspects, the court noted
> the odor of marijuana, the suspects refusing to answer the Officers'
> questions and the peculiar movements of one of the suspects as
> three of the primary circumstances.

(Defs.' MSJ (ECF No. 105-1) at 13.)

Despite defendants' use of quotation marks, a search of the published portion of the D.D.
opinion finds no mention of the "totality of the circumstances."[11]  Nor does the D.D. opinion

---

[10]  Moreover, defendant Johnson had already radioed for assistance prior to the probable cause
determination.  (Johnson Decl. (ECF No. 105-4) at 3.)
[11]  D.D. was certified only for partial publication.

1   discuss probable cause, warrantless searches, or medical marijuana. Instead, the published

2   portion of the <u>D.D.</u> opinion concerns whether a minor's "offenses were not automatically felonies

3   by virtue of his status as a minor . . . ." 234 Cal.App.4th at 826.

4           Moreover, in <u>D.D.</u> two police officers were investigating a series of armed and unarmed

5   robberies within the area by young males wearing loose-fitting dark-colored hooded sweatshirts.

6   <u>Id.</u> Two teenage males—one of whom was only 15 at the time of the incident—wearing hooded

7   sweatshirts were spotted in the area. (<u>Id.</u>) The young males were parked in a parking lot that

8   "was for Muni employees only and prohibiting trespassing." (<u>Id.</u>) Officers smelled marijuana

9   and one of the young men admitted possessing marijuana. (<u>Id.</u> at 827.) When asked for

10  identification, one of the young men provided a false name. (<u>Id.</u>) That young man also behaved

11  in a manner that indicated that he may have been carrying a concealed weapon. (<u>Id.</u>) A search

12  for weapons revealed a semiautomatic handgun. (<u>Id.</u> at 827.) The subject was then placed under

13  arrest. (<u>Id.</u>) In this regard, the probable cause facts in <u>D.D.</u> are markedly different from the facts

14  that were before defendant Johnson in this action.

15          Accordingly, drawing all reasonable inferences supported by the evidence in favor of the

16  plaintiff, the court finds that based on all of the information defendant Johnson possessed at the

17  time of his probable cause determination, a reasonable jury could find that defendant Johnson

18  lacked probable cause to believe that plaintiff was possessing marijuana for sale, in violation of

19  California Health and Safety Code § 11359, or transporting marijuana, in violation of California

20  Health and Safety Code § 11360.

21  **II.     Clearly Established**

22          Defendants argue that "[a]t the time of the arrest, the rights regarding possession of

23  marijuana were anything but 'clearly established.'" (Defs.' MSJ (ECF No. 105-1) at 14.) In this

24  regard, defendants argue that because "it remains a federal crime to possess marijuana . . . . [t]his

25  serves as a basis to say that any state law purporting to legalize marijuana . . . is not clearly

26  established . . . ." (<u>Id.</u>)

27          Defendants cite to <u>Bearman v. California Medical Board</u>, 176 Cal. App. 4th 1588, 1594-

28  1595 (2009), in support of their argument. However, <u>Bearman</u> concerned the California Medical

1    Board's investigation into whether a physician was abusing California's medical marijuana laws.

2    See Id. at 1595 ("No facts are alleged that supervisor disregarded clearly established law in

3    asking patient to consent to release of the medical records or in directing Board investigators to

4    issue the subpoena.  The investigation was based on a park ranger report that appellant might be

5    violating the law.").

6         Moreover, as defense counsel conceded at the October 7, 2016 hearing of defendants'

7    motion for summary judgment, defendant Johnson did not arrest plaintiff for violating a federal

8    law.  Defendant Johnson arrested plaintiff for violations of California state law.  That arrest

9    needed to be supported by probable cause based on the elements of those state laws.  See

10   Hawkins v. Mitchell, 756 F.3d 983, 994 (7th Cir. 2014) ("The existence of probable cause . . .

11   depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by

12   state law."); U.S. v. $186,416.00 in U.S. Currency, 590 F.3d 942, 948 (9th Cir. 2010) ("While

13   there may have been probable cause to search UMCC for a violation of federal law, that was not

14   what the LAPD was doing.  Nothing in the documents prepared at the time the warrant was

15   obtained from the state court or in the procedure followed to obtain that warrant supports the

16   proposition that the LAPD thought it was pursuing a violation of federal law.").

17        Moreover, while "the legal contours of California's [medical marijuana laws] were

18   somewhat obscure in 2003" plaintiff's arrest took place in 2010.  Allen v. Kumagai, No. CV F F-

19   06-1469 AWI SMS, 2010 WL 1797412, at *5 (E.D. Cal. May 4, 2010).  In this regard, defendant

20   was on notice prior to plaintiff's arrest in December of 2010 that a finding of probable cause to

21   arrest plaintiff must account for the fact that plaintiff was a qualified medical marijuana patient.

22   See Kumagai, 356 Fed. Appx. at 9 ("Although Allen cannot use § 1983 to vindicate his purported

23   state-law right to use marijuana for medical purposes, the officers' knowledge of his medical

24   authorization may be relevant to whether they had probable cause to believe he had committed a

25   crime."); $186,416.00, 590 F.3d at 948 (warrant that omitted facts pertaining to medical

26   marijuana violated "Fourth Amendment right against unreasonable searches and seizures, in light

27   of the absence of probable cause under state law"); Mower, 28 Cal.4th at 469 ("Probable cause

28   depends on all of the surrounding facts including those that reveal a person's status as a qualified

1   patient or primary caregiver under section 11362.5(d).”); <u>Butte</u>, 175 Cal.App.4th at 737 (“Any

2   consideration of probable cause must include the officer’s consideration of the individual’s status

3   as a qualified medical marijuana patient.”); <u>see also</u> <u>Ortiz-Hernandez</u>, 427 F.3d at 574 (“As a

4   corollary . . . of the rule that the police may rely on the totality of facts available to them in

5   establishing probable cause, they also may not disregard facts tending to dissipate probable

6   cause.”); <u>Broam v. Bogan</u>, 320 F.3d 1023, 1032 (9th Cir. 2003) (“An officer is not entitled to a

7   qualified immunity defense, however, where exculpatory evidence is ignored that would negate a

8   finding of probable cause.”).

9        Accordingly, for the reasons stated above, the court finds that, at the time of the incident,

10   it was not reasonably arguable that there was probable cause for plaintiff’s arrest.

11   **III.   <u>Lingo</u>**[12]

12        Defendants argue that the Ninth Circuit’s decision in <u>Lingo v. City of Salem</u>, 832 F.3d

13   953 (9th Cir. 2016), demands that “summary judgment must be granted” as a matter of law.

14   (Defs.’ MSJ (ECF No. 105-1) at 22.)  In <u>Lingo</u>, the plaintiff and her neighbor were engaged in a

15   dispute and each separately contacted the police.  832 F.3d at 955.  An officer was dispatched to

16   investigate.  <u>Id.</u>  The officer approached the plaintiff’s home but, “[r]ather than go to the home’s

17   front door,” the officer walked through the plaintiff’s carport and knocked on the rear door.  (<u>Id.</u>)

18   A visitor answered and went to retrieve the plaintiff.  (<u>Id.</u>)  Once the door was opened, the officer

19   smelled marijuana.  (<u>Id.</u>)

20        The plaintiff came outside to speak with the officer, who asked the plaintiff about the

21   marijuana smell.  (<u>Id.</u>)  The plaintiff claimed she was burning hemp-scented incense and insisted

22   that she did not possess any marijuana.  (<u>Id.</u> at 955-56.)  The officer asked for permission to

23   search and the plaintiff refused.  (<u>Id.</u> at 956.)  Another officer arrived at the location and also

24   smelled marijuana.  (<u>Id.</u>)  Thereafter, the plaintiff’s minor child opened the back door.  (<u>Id.</u>)  The

25   officers confirmed that plaintiff’s two minor children were present in the home.  (<u>Id.</u>)  Plaintiff

26   was arrested for endangering the welfare of a minor in violation of Oregon Revised Statutes §

27

28   _____

[12]  For purposes of clarity, the court has re-ordered defendants’ arguments.

16

1   163.575, which prohibits a person under 18 years of age from entering or remaining in a place

2   where unlawful activity involving controlled substances, including marijuana, is maintained or

3   conducted.  (Id.)

4       Following her arrest, police obtained a search warrant and searched the plaintiff's home.

5   (Id.)  Officers found paraphernalia, marijuana, and a schedule IV prescription drug.  (Id.)  At trial,

6   the plaintiff moved to suppress the evidence obtained during the search, arguing that the officers

7   violated the Fourth Amendment by entering her carport and approaching her home's back door.

8   (Id.)  The trial court agreed and granted the plaintiff's motion to suppress.  (Id.)  The charges

9   against the plaintiff were later dropped.  (Id.)

10      The plaintiff filed a civil suit under 42 U.S.C. § 1983 alleging violations of the First,

11  Fourth, and Fourteenth Amendments.  (Id.)  The officers moved for summary judgment and the

12  district court granted that motion.  (Id. at 956-57.)  On appeal, the Ninth Circuit held that "the

13  exclusionary rule does not apply in § 1983 cases."  Lingo, 832 F.3d at 959.  In this regard, the

14  Ninth Circuit rejected the argument that "probable cause to arrest may be supported only by

15  information that was obtained in accordance with the Fourth Amendment."  (Id. at 960.)

16      However, the application of the exclusionary rule is not at issue in this action.  Instead, the

17  court is tasked with examining defendant Johnson's probable cause determination.  In Lingo,

18  there was "little question that the officers had probable cause to arrest [the plaintiff] for th[e]

19  offense."  (Id. at 961.)  In the regard, the Ninth Circuit explained:

20          Both officers at the scene stated that they smelled a strong
            marijuana odor emanating from [the plaintiff's] house.  Both
21          officers were trained to detect such odors, and [the plaintiff] herself
            admitted the presence of such an odor.  Prior to the arrest, [officer]
22          Elmore ran a records check on [the plaintiff] and confirmed that she
            did not have a medical marijuana card and that the house was not a
23          registered medical marijuana grow site.  In other words, the officers
            knew it was unlawful for [the plaintiff] knowingly to possess
24          marijuana, and, in turn, that it was a crime for her to allow minors
            to remain in a place in which she did.  Once the officers saw one of
25          [the plaintiff's] children—and once [the plaintiff] herself told the
            officers that she had two minor children in the house—the
26          underlying facts needed to sustain a violation of section 163.575
            were complete.  In short, the combination of the marijuana odor, the
27          undisputed presence of [the plaintiff's] children in the house, and
            the fact that [the plaintiff] did not have medical marijuana
28          privileges gave the officers probable cause to believe that [the

                                           17

plaintiff] had committed a crime.

(Id.)

Here, as explained above, drawing all reasonable inferences supported by the evidence in favor of the plaintiff, a reasonably jury could find, based on all the facts known to defendant Johnson at the time of his probable cause determination, that defendant Johnson lacked probable cause to believe that plaintiff was violating California Health and Safety Code § 11359 or California Health and Safety Code § 11360. See Rosenbaum v. Washoe County, 663 F.3d 1071, 1076 (9th Cir. 2011) ("The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply."). In this regard, unlike in Lingo, the plaintiff acknowledged that he possessed marijuana and provided defendant Johnson with a medical marijuana card which legally permitted him to possess marijuana. Cf. Lingo, 832 F.3d at 961 ("the fact that Lingo did not have medical marijuana privileges gave the officers probable cause to believe that Lingo had committed a crime").

Accordingly, Lingo does not support the granting of defendants' motion for summary judgment. Having found that a reasonable jury could find that defendant Johnson lacked probable cause, that at the time of the incident it was not reasonably arguable that defendant Johnson had probable cause, and that Lingo does not support defendants' motion for summary judgment, the court denies defendants' motion for summary judgment as to the eighth amended complaint's claims of unlawful search and seizure claims, and false arrest against defendant Johnson.[13]

## IV.   **Withholding of Exculpatory Evidence**

"The government has an obligation under Brady v. Maryland, 373 U.S. 83 (1963), to provide exculpatory evidence to a criminal defendant." U.S. v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004). Defendants argue that plaintiff's allegation that the defendant City of Sacramento

---

[13]  Having found that defendant Johnson is not entitled to qualified immunity, the court also rejects defendants' argument that defendant Johnson is entitled to immunity pursuant to California Penal Code § 847(b). (Defs.' MSJ (ECF No. 105-1) at 15.) In this regard, § 847(b) "contains principles that parallel the [federal qualified] immunity analysis." O'Toole v. Superior Court, 140 Cal. App. 4th 488, 510 (2006). The statute immunizes officers from false arrest claims where there is "reasonable cause to believe the arrest was lawful," which California courts have defined as existing when "the facts known to the arresting officer would lead a reasonable person to have a strong suspicion of the arrestee's guilt." Id. at 511.

1    withheld exculpatory evidence "is bereft of any admissible evidence in support thereof." (Defs.'

2    MSJ (ECF No. 105-1) at 16.) The court agrees.

3          In this regard, plaintiff argues in his opposition that his claim is supported by the fact that

4    defendant Johnson's police report states that he seized plaintiff's valid medical marijuana

5    identification card. (Pl.'s Opp.'n (ECF No. 126-1) at 5.) Nonetheless, the "District Attorney's

6    pictures of all the evidence," do not show "the valid medical marijuana ID the plaintiff handed

7    Officer Johnson . . . ." (Id. at 5-6.) Plaintiff argues "that this is proof that City of Sacramento

8    withheld exculpatory evidence as part of a malicious prosecution against the Plaintiff." (Id. at 6.)

9    Plaintiff then notes that another officer who booked plaintiff's evidence "has other Internal

10   Affairs complaints and a civil complaint for improper search and seizures." (Id.)

11         Nonetheless, even accepting as true plaintiff's assertions, plaintiff has failed to provide

12   any evidence that defendant City of Sacramento or defendant Johnson withheld exculpatory

13   evidence. See generally Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011) ("To maintain a §

14   1983 action for malicious prosecution, a plaintiff must show that the defendants prosecuted her

15   with malice and without probable cause, and that they did so for the purpose of denying her a

16   specific constitutional right."); Tennison v. City and County of San Francisco, 570 F.3d 1078,

17   1089 (9th Cir. 2009) ("a § 1983 plaintiff must show that police officers acted with deliberate

18   indifference to or reckless disregard for an accused's rights or for the truth in withholding

19   evidence from prosecutors").

20         Accordingly, defendants' motion for summary judgment is granted as to this claim.

21   **V.     Monell Liability**

22         Defendants' motion argues that plaintiff has presented no evidence to support his claim of

23   Monell liability. (Defs.' MSJ (ECF No. 105-1) at 20.)

24         Pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality

25   may be liable under § 1983 where the municipality itself causes a constitutional violation through

26   a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be

27   said to represent official policy[.]" Id. at 694. Therefore, municipal liability in a § 1983 case

28   may be premised upon: (1) an official policy; (2) a "longstanding practice or custom which

                                        19

1    constitutes the standard operating procedure of the local government entity;" (3) the act of an

2    "official whose acts fairly represent official policy such that the challenged action constituted

3    official policy;" or (4) where "an official with final policy-making authority delegated that

4    authority to, or ratified the decision of, a subordinate." Price v. Sery, 513 F.3d 962, 966 (9th Cir.

5    2008).

6         However, "[l]iability for improper custom may not be predicated on isolated or sporadic

7    incidents; it must be founded upon practices of sufficient duration, frequency and consistency that

8    the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d

9    911, 918 (9th Cir. 1996) *holding modified by* Navarro v. Block, 250 F.3d 729 (9th Cir. 2001).

10   Nonetheless, the Ninth Circuit has "long recognized that a custom or practice can be 'inferred

11   from widespread practices or "evidence of repeated constitutional violations for which the errant

12   municipal officers were not discharged or reprimanded.'" Hunter v. County of Sacramento, 652

13   F.3d 1225, 1233-34 (9th Cir. 2011) (quoting Nadell v. Las Vegas Metro. Police Dep't, 268 F.3d

14   924, 929 (9th Cir. 2001)).  "[E]*vidence* of inaction—specifically, failure to investigate and

15   discipline employees in the face of widespread constitutional violations—can support an

16   inference that an unconstitutional custom or practice has been unofficially adopted by a

17   municipality." Hunter, at 1234 n. 8 (emphasis in original).

18        Here, plaintiff has not provided any evidence in support of this claim.  In this regard, there

19   is no genuine dispute as to any material fact with respect to the eighth amended complaint's

20   Monell claim.  Defendants' motion for summary judgment is, therefore, granted as to this claim.

21                                          CONCLUSION

22        For the reasons stated above, defendants' motion for summary judgment is denied as to

23   the eighth amended complaint's claims of unlawful search and seizure and false arrest against

24   defendant Johnson and granted as to the claims of withholding exculpatory evidence and Monell

25   against defendant City of Sacramento.  Defendant City of Sacramento is dismissed from this

26   action and the matter will proceed to trial on the unlawful search and seizure, and false arrest

27   claims against defendant Johnson.

28   ////

                                              20

FURTHER SCHEDULING

**1)  <u>Final Pretrial Conference</u>**

Final Pretrial Conference is **SET** for **April 7, 2017 at 1:30 p.m.** in courtroom no. 27 before the undersigned.  Trial counsel shall appear at the Final Pretrial Conference.

The parties are to be fully prepared for trial at the time of the Pretrial Conference, with no matters remaining to be accomplished except production of witnesses for oral testimony.  The parties are referred to Local Rules 281 and 282 relating to the contents of and time for filing Pretrial Statements.  A FAILURE TO COMPLY WITH LOCAL RULES 281 AND 282 WILL BE GROUNDS FOR SANCTIONS.

Notwithstanding the provisions of Local Rule 281, which contemplates the filing of separate Pretrial Statements by plaintiff and defendant, the parties are to prepare a <u>JOINT STATEMENT</u> with respect to the undisputed facts and disputed factual issues of the case.  The undisputed facts and disputed factual issues are to be set forth in two separate sections.  The parties should identify those facts which are relevant to each separate cause of action.  In this regard, the parties are to number each individual fact or factual issue.  Where the parties are unable to agree as to what factual issues are properly before the court for trial, they should nevertheless list in the section on "DISPUTED FACTUAL ISSUES" all issues asserted by any of the parties and explain by parenthetical the controversy concerning each issue.  The parties should keep in mind that, in general, each fact should relate or correspond to an element of the relevant cause of action.  The parties should also keep in mind that the purpose of listing the disputed factual issues is to apprise the court and all parties about the precise <u>issues</u> that will be litigated at trial.  <u>The court is not interested in a listing of all evidentiary facts underlying the issues that are in dispute.</u>  However, with respect to the listing of <u>un</u>disputed facts, the court will accept agreements as to evidentiary facts.  The joint statement of undisputed facts and disputed factual issues is to be filed with the court concurrently with the filing of plaintiff's Pretrial Statement.  If the case is tried to a jury, the undisputed facts will be read to the jury.

Pursuant to Local Rule 281(b)(10) and (11), the parties are required to provide in their Pretrial Statements a list of witnesses and exhibits that they propose to proffer at trial, no matter

21

for what purpose.  These lists shall <u>not</u> be contained in the Pretrial Statement itself, but shall be attached as separate documents to be used as addenda to the Final Pretrial Order.  Plaintiff's exhibits shall be listed <u>numerically</u>; defendant's exhibits shall be listed <u>alphabetically</u>.  The Pretrial Order will contain a stringent standard for the proffering of witnesses and exhibits at trial not listed in the Pretrial Order.  Counsel are cautioned that the standard will be strictly applied.  On the other hand, the listing of exhibits or witnesses which counsel do not intend to call or use will be viewed as an abuse of the court's processes.

The parties are also reminded that, pursuant to Fed. R. Civ. P. 16, it will be their duty at the Pretrial Conference to aid the court in (a) formulation and simplification of issues and the elimination of frivolous claims or defenses; (b) settling of facts which should be properly admitted; and (c) the avoidance of unnecessary proof and cumulative evidence.  The parties must prepare their Pretrial Statements, and participate in good faith at the Pretrial Conference, with these aims in mind.  A FAILURE TO DO SO MAY RESULT IN THE IMPOSITION OF SANCTIONS which may include monetary sanctions, orders precluding proof, eliminations of claims or defenses, or such other sanctions as the court deems appropriate.

The parties are advised that a Settlement Conference may be scheduled when the Final Pretrial Conference is held.[14]  The court may require that all parties proceeding pro se be present at the Settlement Conference.  Such a settlement conference may be set before the undersigned, if both parties request that the undersigned participate in the conference and will waive any claim of disqualification on that basis.  The parties may also request a settlement conference before another magistrate judge.  <u>See</u> Local Rule 270(b).

**2)      TRIAL SETTING**

Trial is set on **June 26, 2017 at 9:00 a.m.** in courtroom no. 27 before the undersigned.  Trial will be by jury and is estimated to last 4 court days.

---

[14]  At any time prior to the Final Pretrial Conference, an early settlement conference may be set before the undersigned, or another magistrate judge who is randomly selected, if all parties agree to request an early settlement conference.  Either party may initiate such a request by calling Pete Buzo, courtroom deputy to the undersigned, at (916) 930-4128.  Information will be provided regarding the procedure to follow.

22

CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment (ECF No. 105) is denied in part and granted in part;

2. Plaintiff's September 22, 2016 motion to remand (ECF No. 122) is denied without prejudice[15];

3. A Final Pretrial Conference is set for **April 7, 2017 at 1:30 p.m.** in courtroom no. 27 before the undersigned; and

4. This matter is set for a jury trial not to exceed 5 court days on **June 26, 2017 at 9:00 a.m.** in courtroom no. 27 before the undersigned.

Dated:  January 30, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.consent\o'neal2374.msj.ord

---

[15]  Plaintiff was advised on September 28, 2016, that his motion to remand needed to be re-noticed for hearing on an available law and motion date.  (ECF No. 123.)  Plaintiff has not re-noticed the motion for hearing.  Accordingly, the motion is denied without prejudice to renewal.

23