UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SEAN O'NEAL,

    Plaintiff,

v.

AUGUST JOHNSON, et al.,

    Defendants.

No. 2:14-cv-2374 DB PS

ORDER

This matter came before the court on February 16, 2018, for the hearing of plaintiff's motion for a new trial.[1] (ECF No. 231.) Senior Deputy City Attorney Sean Richmond and attorney Joseph Salazar, Jr., appeared on behalf of the defendant. Attorney Matthew Becker appeared on behalf of the plaintiff.[2] After hearing oral argument, plaintiff's motion was taken under submission.

Having reviewed plaintiff's motion, the documents filed in support and opposition, and the arguments made at the February 16, 2018 hearing, plaintiff's motion is granted and a new trial will be held in this action due to a harmful jury instruction error.

---

[1] The parties have consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 16.)

[2] Although attorney Becker was initially appointed as standby counsel, he has since appeared as plaintiff's counsel. (ECF No. 166.)

BACKGROUND

This action was removed to this court on October 9, 2014. (ECF No. 1.) As recounted in the Court's August 1, 2017 Final Pretrial Order, it is undisputed that on December 13, 2010, at approximately 2:01 p.m., while on routine bike patrol, defendant Sacramento Police Department Officer August Johnson received a dispatch. (ECF No. 181 at 2.) The dispatched advised that a Greyhound Bus security officer reported that a black man, standing approximately 5'8", and wearing a black hat and brown jacket had left the bus station and was walking up 7th Street toward J Street. (Id.) According to the dispatch, the man was carrying a large black bag emitting a strong odor of marijuana. (Id.) In response to receiving the bulletin, Officer Johnson headed westbound on J Street and saw the subject who was described in the bulletin, plaintiff Sean O'Neal. Plaintiff O'Neal was walking toward Officer Johnson. (Id.)

Officer Johnson rode up to plaintiff, who was talking on a cell phone at that time, and was carrying a large black trash bag and a black briefcase. (Id.) Once Plaintiff finished his phone call, Officer Johnson introduced himself and asked plaintiff if he was carrying any marijuana, to which plaintiff said yes. (Id.) While plaintiff started to walk away, Officer Johnson rode alongside of plaintiff and asked him how much marijuana he was carrying. (Id.) At no time did plaintiff tell Officer Johnson how much marijuana he was carrying. (Id.)

Plaintiff found his medical marijuana card in his wallet, which stated that he was legally permitted to carry an amount of eight ounces of marijuana for his personal use. (Id.) Officer Johnson formally detained plaintiff and took both the trash bag and briefcase from plaintiff's person. (Id.) Officer Johnson unknotted the trash bag and found four half-gallon Ziploc baggies filled with marijuana. (Id.) Officer Johnson opened the briefcase and found three more half-gallon Ziploc baggies, and 11 quart-sized baggies, also all filled with marijuana. (Id.) A digital scale and two books about marijuana were also found in the briefcase. (Id.)

Also in plaintiff's possession were a business card from Angel Collective, a legal cannabis clinic, and an I.O.U. note in the amount of $1,400.00 in exchange for a half pound of "grape ape" marijuana signed by Doug Carter. (Id.) Plaintiff was arrested for violation of California Health and Safety Code §§ 11359, 11360 and booked into the Sacramento County Jail. (Id.; ECF No.

131 at 3.) The marijuana was booked into evidence and later weighed. (ECF No. 181 at 2.) The cumulative weight of all of the baggies was 3.75 pounds. (Id.) On December 15, 2010, plaintiff was formally arraigned by the Sacramento County District Attorney for a felony violation of California Health & Safety Code § 11359. (Id.)

Plaintiff remained incarcerated until December 6, 2011, at which time plaintiff's motion to suppress evidence pursuant to California Penal Code § 1538.5 was granted by the Sacramento County Superior Court. (Id.) The Sacramento County Superior Court found that Officer Johnson did not have probable cause to believe that plaintiff was in possession of an amount of marijuana exceeding the eight-ounce limit. (Id.) All charges stemming from the December 13, 2010 arrest were then dismissed by the County of Sacramento. (Id.)

On December 4, 2017, a four-day jury trial commenced on claims that defendant Johnson engaged in unlawful search and seizure, false arrest, and the malicious prosecution of the plaintiff. (ECF Nos. 216-219.) On December 7, 2017, the jury returned a verdict in defendant's favor with respect to each cause of action. (ECF No. 221.)

On January 2, 2018, plaintiff filed a motion for a new trial pursuant to Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure based on an allegedly improper jury instruction pertaining to California's law concerning medical marijuana. (ECF No. 225.) Defendant filed an opposition on January 16, 2018. (ECF No. 226.) Plaintiff filed a reply on February 8, 2018. (ECF No. 227.)

## LEGAL STANDARDS

Rule 59(a)(1)(A) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980) (per curiam). A new trial may be warranted where the court has given "erroneous jury instructions" or failed "to give adequate instructions." Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir. 1990); see also Watson v. City of San Jose, 800 F.3d 1135, 1141 (9th Cir. 2015) ("Accordingly, the district court did not err by concluding that a new trial was warranted. The jury instructions in the first trial may have permitted the jury to

improperly award damages for deprivations for which Defendants were not responsible.").

"An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless." Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir. 1992); see also Cobb v. Pozzi, 363 F.3d 89, 112 (2nd Cir. 2004) ("Where the court's instruction misleads the jury as to the correct legal standard or where it fails to adequately inform the jury on the law, it will be deemed erroneous. An erroneous jury instruction mandates a new trial unless the error is harmless.").

## ANALYSIS

I. Plaintiff's Motion

Plaintiff's motion challenges the jury's instruction with respect to probable cause. Specifically, plaintiff challenges Jury Instruction Number 17.[3] (Pl.'s Mot. (ECF No. 225) at 1-5.) Jury Instruction Number 17 was based on Ninth Circuit Model Civil Jury Instruction 9.23 (2017) "PARTICULAR RIGHTS—FOURTH AMENDMENT—UNREASONABLE SEIZURE OF PERSON—PROBABLE CAUSE ARREST." Model Jury Instruction 9.23 reads:

> In general, a seizure of a person by arrest without a warrant is reasonable if the arresting officer[s] had probable cause to believe the plaintiff has committed or was committing a crime.
>
> In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that [he] [she] was arrested without probable cause.
>
> "Probable cause" exists when, under all of the circumstances known to the officer[s] at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.
>
> Although the facts known to the officer are relevant to your inquiry, the officer's intent or motive is not relevant to your inquiry.
>
> Under [federal] [state] law, it is a crime to [*insert elements or description of applicable crime for which probable cause must have existed*].

(emphasis in original) (available at http://www3.ce9.uscourts.gov/jury-instructions/model-civil).

////

---

[3] Plaintiff objected to Jury Instruction No. 17 at trial. (ECF No. 218; ECF No. 225 at 1.)

4

Here, Jury Instruction Number 17 read:

> In general, a seizure of a person by arrest without a warrant is reasonable if the arresting officer had probable cause to believe the plaintiff has committed or was committing a crime.
>
> In order to prove the seizure in this case was unreasonable, the plaintiff must prove by a preponderance of the evidence that he was arrested without probable cause.
>
> As previously explained, "probable cause" exists when, under all of the circumstances known to the officer at the time, an objectively reasonable police officer would conclude there is a fair probability that the plaintiff has committed or was committing a crime.
>
> Although the facts known to the officer are relevant to your inquiry, the officer's intent or motive is not relevant to your inquiry.
>
> Under California law, an officer may arrest a qualified patient for marijuana offenses where there is probable cause to believe that the arrestee does not possess marijuana for his personal medical purposes.

(ECF No. 220 at 23.) Plaintiff argues that the portion of the instruction explaining to the jury the description of California's law with respect to marijuana possession was erroneous.

Plaintiff asserts that instructing the jury that, "[u]nder California law, an officer may arrest a qualified patient for marijuana offenses where there is probable cause to believe that the arrestee does not possess marijuana for his personal medical purposes" is contradicted by California Health and Safety Code § 11362.775. (Pl.'s Mot. (ECF No. 225) at 1-2.) At the time of plaintiff's arrest, § 11362.775 provided:

> Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under [California Health and Safety Code] Section 11357, 11358, <u>11359</u>, <u>11360</u>, 11366, 11366.5, or 11570.[4]

Cal. Health & Safety Code § 11362.775 (2010) (emphasis added).

////

---

[4] As noted above, plaintiff was arrested for violation of California Health and Safety Code §§ 11359, 11360 which concern the possession of marijuana for sale and the transportation of marijuana.

5

II. California's Medical Marijuana Laws

To fully understand plaintiff's argument, it is helpful to review some of the history of California's laws governing medical marijuana. In 1996, California voters approved the Compassionate Use Act ("CUA") which "provides that the criminal statutes proscribing marijuana possession and cultivation do not apply to patients who possess or cultivate marijuana <u>for their personal medical purposes</u> upon a doctor's written or oral recommendation or approval." <u>People v. Orlosky</u>, 233 Cal.App.4th 257, 266-67 (2015) (emphasis added). One of the goals of the CUA was to "provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." Cal. Health & Safety Code § 11262.5(b)(1)(C).

To achieve this goal, California "extended certain protections to individuals who elected to participate in the identification card program. Those protections included immunity from prosecution for a number of marijuana-related offenses that had not been specified in the CUA, among them transporting marijuana." <u>People v. Wright</u>, 40 Cal.4th 81, 93 (Cal. 2006).

Specifically, in 2003 the California Legislature enacted the Medical Marijuana Program ("MMP" also referred to in some cases as the "MMPA")[5] which "includes a provision concerning collective cultivation, stating that '[q]ualified patients . . . who associate . . . in order collectively or cooperatively to cultivate marijuana for medical purposes' are exempt from criminal culpability." <u>Orlosky</u>, 233 Cal.App.4th at 267.

The California courts have weighed in on the application and interpretation of the MMP; <u>United States v. Kleinman</u>, 880 F.3d 1020, 1029 (9th Cir. 2017) ("The MMP provides immunity from prosecution for possession and distribution of marijuana to qualified patients and their primary caregivers who associate within the State of California in order collectively or cooperatively to cultivate cannabis for medical purposes."); <u>People v. Mentch</u>, 45 Cal.4th 274, 290 (Cal. 2008) ("the Program immunizes from prosecution a range of conduct ancillary to the provision of medical marijuana to qualified patients"); <u>People v. Hochanadel</u>, 176 Cal.App.4th 997, 1011 (2009) ("section 11362.775 . . . exempts medical marijuana patients, persons with valid

---

[5] Cal. Health & Safety Code § 11362.775.

medical marijuana identification cards and their primary caregivers who form collectives or cooperatives to cultivate marijuana from prosecution for several drug-related crimes"); People v. Urziceanu, 132 Cal.App.4th 747, 785 (2005) ("the Legislature also exempted those qualifying patients . . . who collectively or cooperatively cultivate marijuana for medical purposes from criminal sanctions for possession for sale, transportation or furnishing marijuana").

Section 11362.775 "plainly allow[s] . . . valid identification cardholders . . . to pool their efforts and resources to cultivate marijuana for the qualified patients and holders of valid identification cards, in amounts necessary to meet the reasonable medical needs of the qualified patients and cardholders—without being subject to criminal sanctions for, among other offenses, unlawful marijuana possession (§ 11357), cultivation (§ 11358), or possession for sale (§ 11359)—provided they do not earn a profit from the cultivation, distribution, or sale of the medical marijuana." People v. London, 228 Cal.App.4th 544, 554 (2014) (emphasis added).[6] "Although section 11362.775 clearly provides for collective cultivation, it does not specify what [is] meant by an association of persons who engage in collective or cooperative cultivation for medical purposes. For example, there is no mention of formality requirements, permissible numbers of persons, acceptable financial arrangements, or distribution limitations." Orlosky, 233 Cal.App.4th at 267-68.

However, "[o]n the face of the statute, to be entitled to a defense under section 11362.775, a defendant must, first, be either a qualified patient, person with a valid identification card or a designated primary caregiver. Second, the defendant must associate with like persons to collectively or cooperatively cultivate marijuana." People v. Colvin, 203 Cal.App.4th 1029, 1037 (2012) (citing § 11362.775); see also United States v. Pisarski, 274 F.Supp.3d 1032, 1038 (N.D. Cal. 2017) ("In the face of, but consistent with, such minimal guidance, it would seem the best approach to determining the applicability of the collective cultivation defense in the case of a

---

[6] In August of 2008, the California Attorney General issued "Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use." Those guidelines provided, in part, that "collectives and cooperatives may cultivate and transport marijuana in aggregate amounts tied to its membership numbers." See http://ag.ca.gov/cms_attachments/press/pdfs/n1601_medicalmarijuanaguidelines.pdf

7

defendant charged with possession for sale would be to require of the defendant a showing proportional to the imminence and definiteness of the alleged sale. That is to say, where a sale is imminent and the features of the sale definite, the defendant must show every aspect of that sale was compliant with the terms of MMPA; where, however, any future sale is purely speculative, the defendant must show only that, by the time of such sale, he could ensure compliance."); Wright, 40 Cal.4th at 96 ("In this case, defendant was charged with transporting marijuana. He presented evidence at trial that he had purchased the marijuana found in his car on the morning of his arrest for his own personal medical use and was in the process of transporting the marijuana to his home when he was arrested. This testimony was sufficient to merit instruction on the defense to a charge of transporting marijuana set forth in the MMP."); and, People v. Jackson, 210 Cal.App.4th 525, 529 (2012) provides, "The defense the MMPA provides to patients who participate in collectively or cooperatively cultivating marijuana requires that a defendant show that members of the collective or cooperative: (1) are qualified patients who have been prescribed marijuana for medicinal purposes, (2) collectively associate to cultivate marijuana, and (3) are not engaged in a profit-making enterprise.".

Moreover,

> . . . in cases raising the issue of whether a defendant is entitled to a defense under the Compassionate Use Act (CUA) or MMPA, the defenses relate directly to the nature of the defendant's conduct as opposed to a collateral matters. Consequently, those defenses only require that a defendant raise a reasonable doubt as to whether the elements of the defenses have been proven. When the trial court addresses this issue, it does not consider the credibility of the witnesses. That issue is left to the jury to decide.

People v. Baniani, 229 Cal.App.4th 45, 53 (2014) (citations and quotations omitted); see also People v. Solis, 217 Cal.App.4th 51, 57 (2013) ("Because the prosecution bears the burden of proving the defendant's guilt, the defendant need only produce evidence that raises a reasonable doubt whether his or her acts were protected under the MMP."); "At a minimum . . . the instructions must explain that, in a lawful cooperative or collective, members need not necessarily participate personally in cultivation or any other particular duties, and that the exchange of marijuana for money does not, by itself, make a transaction unlawful within a collective or

cooperative." People v. Anderson, 232 Cal.App.4th 1259, 1282 (2015)

At the time of the events at issue in this action California had enacted the CUA and the MMP. "'Among other things, these statutes exempt the 'collective or cooperative cultivation' of medical marijuana by qualified patients and their designated caregivers from prosecution . . . under specified state criminal and nuisance laws that would otherwise prohibit those activities.'" The Kind and Compassionate v. City of Long Beach, 2 Cal.App.5th 116, 120 (2016) (quoting City of Riverside v. Inland Empire Patients Health and Wellness Center, Inc., 56 Cal.4th 729, 737 (Cal. 2013)) (alterations omitted); see also Riverside, 56 Cal.4th at 738 (conduct described by CUA and MMP "cannot lead to arrest or conviction").

III.   Jury Instruction Error

The issue before this court is whether the jury was properly instructed with respect to California law. At the hearing of plaintiff's motion, when asked by the court, defendant's counsel responding that Officer Johnson had to take into account the MMP in determining whether he had probable cause to arrest plaintiff. And the court agrees, as explained below.

The court, "[i]n determining whether there was probable cause to arrest, we look to 'the totality of circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime.'" Crowe v. County of San Diego, 608 F.3d 406, 432 (9th Cir. 2010) (quoting United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986)).

As acknowledged by defense counsel, the possibility that plaintiff's conduct complied with the CUA and/or MMP was part of the totality of circumstances Officer Johnson had to consider. See Allen v. Kumagai, 356 Fed. Appx. 8, 9 (9th Cir. 2009) ("Although Allen cannot use § 1983 to vindicate his purported state-law right to use marijuana for medical purposes, the officers' knowledge of his medical authorization may be relevant to whether they had probable cause to believe he had committed a crime."); U.S. v. Phillips, 9 F.Supp.3d 1130, 1138 (E.D. Cal. 2014) ("when officers become aware that a suspect has a medical marijuana card, the officers must take that information into account when determining whether there is probable cause to conduct a warrantless search or arrest that individual"); Allen v. Kumagai, No. CV F F-06-1469

AWI SMS, 2010 WL 1797412, at *5 (E.D. Cal. May 4, 2010) ("Because the CUA renders possession of marijuana within the terms of the statute non-criminal . . . there must be at least some reasonable suspicion of conduct that lies outside the statue constituting a crime for an arrest to be lawful."); People v. Mower, 28 Cal.4th 457, 469 (Cal. 2002) ("Probable cause depends on all of the surrounding facts including those that reveal a person's status as a qualified patient or primary caregiver under section 11362.5(d)."); County of Butte v. Superior Court, 175 Cal.App.4th 729, 737 (2009) ("Any consideration of probable cause must include the officer's consideration of the individual's status as a qualified medical marijuana patient.").

At trial, the jury heard evidence from which they could infer that plaintiff possessed a valid medical marijuana card. Further, that plaintiff associated with a collective to cultivate marijuana and that plaintiff was not engaged in a profit-making enterprise. The jury also heard evidence that defendant Johnson was aware of these facts. Defendant's opposition even argues that the jury "evaluated all of the circumstances" in "evaluating whether Defendant reasonably believed that he had probable cause to arrest Plaintiff . . . . including evidence relating to Plaintiff's purported affiliation with the Angel Care Collective." (Def.'s Opp.'n (ECF No. 226) at 2.)

The jury, however, was not instructed that Officer Johnson had to consider whether plaintiff was in compliance with the MMP in making a probable cause determination. Nor was the jury instructed about the existence of the MMP. Instead, the jury was instructed simply that a medical marijuana patient could be arrested "where there is probable cause to believe that the arrestee does not possess marijuana for his personal medical purposes." (ECF No. 220 at 23.) As recounted above, that is an incomplete statement of the applicable law.

"'[J]ury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.'" Dang v. Cross, 422 F.3d 800, 804 (9th Cir. 2005) (quoting White v. Ford Motor Co., 312 F.3d 998, 1012 (9th Cir. 2002)). "The instructions must allow the jury to determine the issues presented intelligently." Fikes v. Cleghorn, 47 F.3d 1011, 1013 (9th Cir. 1995). Moreover, "[e]ach party is . . . 'entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence.'" Clem v. Lomeli,

566 F.3d 1177, 1181 (9th Cir. 2009) (quoting Dang, 422 F.3d at 804).

The parties do not dispute that consideration of the MMP should had been part of Officer Johnson's probable cause determination. The jury's instruction, however, did not fairly and adequately cover that issue. Accordingly, the court finds that instructing the jury pursuant to Jury Instruction number 17 constituted error.

IV. Harmless Error

"However, if the 'error in the jury instruction is harmless, it does not warrant reversal.'" Hunter v. County of Sacramento, 652 F.3d 1225, 1232 (9th Cir. 2011) (quoting Dang, 422 F.3d at 805). "Because we 'presume prejudice where civil trial error is concerned,' the 'burden shifts to the defendant to demonstrate that it is more probable than not that the jury would have reached the same verdict had it been properly instructed.'" Clem, 566 F.3d at 1182 (quoting Dang, 422 at 811); see also Chess v. Dovey, 790 F.3d 961, 977 (9th Cir. 2015) ("Although we conclude that the jury instruction was error, we do not reverse the judgment because defendants have carried their burden of showing that it is more probable than not that the jury would have reached the same verdict had it been properly instructed.").

Defendant's opposition argues that the evidence failed to "establish that Plaintiff was a member of Angel Care Collective, such that his sale of marijuana to Angel Care Collective would be lawful under section 11362.775." (Def.'s Opp.'n (ECF No. 226) at 4.) Accordingly, defendant argues that plaintiff's evidence "cannot show that Defendant lacked probable cause to believe that Plaintiff's marijuana possession was unlawful." (Id.)

A jury may find defendant's argument well taken. But as defense counsel conceded, the evidence was such that Officer Johnson had to take into account the potential applicability of § 11362.775. Officer Johnson may have done so. And a jury could certainly have found that he had probable cause to arrest plaintiff after taking into account § 11362.775. The jury here, however, was never instructed as to the existence of § 11362.775 nor of Officer Johnson's duty to consider § 11362.775. Instead, the jury was informed that Officer Johnson could arrest plaintiff simply if there was probable cause to believe that plaintiff did not possess marijuana for his personal medical purposes.

11

| | |
|---|---|
| 1 | Stated succinctly, the jury in this action was instructed with respect to the CUA. Pursuant |
| 2 | to the CUA, plaintiff could only lawfully possess marijuana sufficient for his personal medical |
| 3 | needs. According to his medical marijuana card, eight ounces were sufficient for his personal |
| 4 | medical needs. The jury, however, was not instructed with respect to the MMP. |
| 5 | Under the MMP, plaintiff could potentially lawfully possess much more marijuana than |
| 6 | that necessary for his personal medical needs, possibly up to and exceeding the 3.75 pounds in his |
| 7 | possession. Under such circumstances, the court cannot say that had the jury been properly |
| 8 | instructed, the verdict would have been the same. See Clem, 566 F.3d at 1183 ("Because we |
| 9 | cannot determine one way or another whether the jury understood 'deliberate indifference' to |
| 10 | include the affirmative act element, we cannot say the verdict would have been the same without |
| 11 | the error. If the jury had been properly instructed, it 'may well have concluded that' Lomeli was |
| 12 | liable to Clem for failing to abate the risk of harm from Godman."). Accordingly, the court finds |
| 13 | that the error in the jury instruction was not harmless. |
| 14 | For the reasons stated above, plaintiff's motion for a new trial is granted. |
| 15 | FURTHER SCHEDULING |
| 16 | A Final Pretrial Conference is **SET** for **November 9, 2018, at 1:30 p.m.** in courtroom no. |
| 17 | 27 before the undersigned. Trial counsel shall appear at the Final Pretrial Conference. |
| 18 | The parties are to be fully prepared for trial at the time of the Pretrial Conference, with no |
| 19 | matters remaining to be accomplished except production of witnesses for oral testimony. The |
| 20 | parties are referred to Local Rules 281 and 282 relating to the contents of the Pretrial Statements. |
| 21 | A FAILURE TO COMPLY WITH LOCAL RULES 281 AND 282 WILL BE GROUNDS FOR |
| 22 | SANCTIONS. |
| 23 | Notwithstanding the provisions of Local Rule 281, which contemplates the filing of |
| 24 | separate Pretrial Statements by plaintiff and defendant, the parties are to prepare a <u>JOINT</u> |
| 25 | <u>STATEMENT</u> with respect to the undisputed facts and disputed factual issues of the case. The |
| 26 | undisputed facts and disputed factual issues are to be set forth in two separate sections. The |
| 27 | parties should identify those facts which are relevant to each separate cause of action. In this |
| 28 | regard, the parties are to number each individual fact or factual issue. Where the parties are |

unable to agree as to what factual issues are properly before the court for trial, they should nevertheless list in the section on "DISPUTED FACTUAL ISSUES" all issues asserted by any of the parties and explain by parenthetical the controversy concerning each issue. The parties should keep in mind that, in general, each fact should relate or correspond to an element of the relevant cause of action.

The parties should also keep in mind that the purpose of listing the disputed factual issues is to apprise the court and all parties about the precise <u>issues</u> that will be litigated at trial. <u>The court is not interested in a listing of all evidentiary facts underlying the issues that are in dispute.</u> However, with respect to the listing of <u>un</u>disputed facts, the court will accept agreements as to evidentiary facts. If the case is tried to a jury, the undisputed facts will be read to the jury. The parties' joint statement shall also address the parties' position on the number of jurors to be impaneled to try the case. The joint statement of undisputed facts and disputed factual issues is to be filed with the court concurrently with the filing of plaintiff's Pretrial Statement on or before **October 26, 2018**. Concurrently with the filing of the joint statement, the parties shall submit a copy as a word document, in its entirety (including the witness and exhibit lists discussed below) to: dborders@caed.uscourts.gov.

Pursuant to Local Rule 281(b)(10) and (11), the parties are required to provide in their Pretrial Statements a list of witnesses and exhibits that they propose to proffer at trial, no matter for what purpose. These lists shall <u>not</u> be contained in the Pretrial Statement itself, but shall be attached as separate documents to be used as addenda to the Final Pretrial Order. Plaintiff's exhibits shall be listed <u>numerically</u>; defendant's exhibits shall be listed <u>alphabetically</u>. In the event that the alphabet is exhausted, the exhibits shall be marked "AA-ZZ". However, if the amount of defendant exhibits exceeds "ZZ" exhibits shall be then listed as AAA, BBB, CCC, etc. Each page within a multi-page exhibit shall be numbered. (For example, Exhibit A-1, A-2, A-3). In the event that plaintiff and defendant offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit was first identified by the moving party. The court cautions the parties to pay attention to this detail so that all concerned, including the jury, will not be confused by one exhibit being identified with both a number and a letter.

The Pretrial Order will contain a stringent standard for the proffering of witnesses and exhibits at trial not listed in the Pretrial Order. Counsel are cautioned that the standard will be strictly applied. On the other hand, the listing of exhibits or witnesses which counsel do not intend to call or use will be viewed as an abuse of the court's processes.

The parties are also reminded that, pursuant to Fed. R. Civ. P. 16, it will be their duty at the Pretrial Conference to aid the court in (a) formulation and simplification of issues and the elimination of frivolous claims or defenses; (b) settling of facts which should be properly admitted; and (c) the avoidance of unnecessary proof and cumulative evidence. The parties must prepare their Pretrial Statements, and participate in good faith at the Pretrial Conference, with these aims in mind. A FAILURE TO DO SO MAY RESULT IN THE IMPOSITION OF SANCTIONS which may include monetary sanctions, orders precluding proof, eliminations of claims or defenses, or such other sanctions as the court deems appropriate.

CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's January 2, 2018 motion for a new trial (ECF No. 225) is granted;

2. The December 7, 2017 judgment is vacated;

3. Plaintiff's Pretrial Statement and the parties' Joint Pretrial Statement shall be filed on or before **October 26, 2018**;

4. Defendant's Pretrial Statement shall be filed on or before **November 2, 2018**; and

5. A Final Pretrial Conference is **SET** for **November 9, 2018, at 1:30 p.m.** in courtroom no. 27 before the undersigned. Trial counsel shall appear at the Final Pretrial Conference.

Dated: August 22, 2018

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.consent\o'neal2374.nt.ord2